DENNIS K. HOY AND BETH S. HOY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoy v. Commissioner
Docket No. 21588-89
United States Tax Court
T.C. Memo 1991-575; 1991 Tax Ct. Memo LEXIS 623; 62 T.C.M. (CCH) 1298; T.C.M. (RIA) 91575; November 26, 1991, Filed *623 Decision will be entered for the respondent. Kendall O. Schlenker, for the petitioners. Pamelya P. Herndon, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION This case was heard pursuant to section 7443A(b)(3) [1] and Rule 180 et seq. Respondent determined deficiencies in petitioners' Federal income taxes for 1985 and 1987 in the amounts of $ 4,202 and $ 742, respectively. The issues for decision are: (1) Whether petitioners' activity involving tournament bass fishing and sales of fishing tackle, rods, and lures was an activity not engaged in for profit under section 183; and (2) whether petitioners are entitled to an investment tax credit in the amount of $ 1,846 in 1985 for a boat, motor, and trailer used in the fishing activity. Some of the facts were stipulated and are so found. Petitioners *624 resided at Clovis, New Mexico, when they filed their petition. Petitioners were both employed full time as physical education teachers in junior high schools in Clovis, New Mexico, during the years at issue, and each of them had been so employed for more than 20 years. Until approximately 1987 or 1988, in addition to teaching, Dennis K. Hoy (petitioner) also coached football and basketball at the junior high level. In 1979, petitioner took stock of his coaching career and determined that he would likely not be offered a position as a coach above the junior high level in Clovis. He decided to look for an alternative occupation. Petitioner had commenced bass fishing for recreation in 1978 and had done well in local bass club tournaments in 1978 and 1979. In 1980, petitioner entered a national level bass tournament and won a boat. Encouraged by his successes, petitioner decided to pursue bass fishing professionally, on a part-time basis initially, with the intention of making it a full-time occupation upon his retirement from teaching in 1992. Petitioner enjoyed continued success with his competitive bass fishing in the years following 1980. He participated in several national *625 tournaments, including 4 U.S. Open tournaments, and qualified for other championship tournaments in 1985 and 1987. Petitioner placed 13th in a field of 300 competitors in the 1987 U.S. Bass Open. The entry fee for that tournament was $ 1,200, and the top 60 participants received prize money. The top prize for the 1987 U.S. Bass Open was $ 50,000, and petitioner received $ 3,000 in prize money for his 13th place finish. Petitioner's successes in bass tournament fishing were the subject of 2 newspaper articles in 1989. From 1980 to 1991, petitioner entered approximately 20 to 25 bass tournaments per year and, in each year, won prizes consisting of money and goods worth in excess of the total entry fees expended to participate in the tournaments. In 1985, petitioners obtained a New Mexico Tax Certificate for wholesale purchases and retail sales of fishing tackle and lures. During the years at issue, petitioner bought fishing lures and equipment on a wholesale basis and sold them at retail to other fishermen and spectators at bass tournaments. The receipts from these sales helped defray petitioner's costs of traveling to and participating in tournaments. During 1984 and 1985, *626 petitioner was also sponsored as a tournament participant by Lunar Lures, a fishing tackle manufacturer. The sponsorship consisted of discounts on lures and equipment and payment of some of petitioner's tournament entry fees and travel expenses by the sponsor. In addition to participating in bass tournaments, petitioner spoke at fishing seminars and wrote at least one article about fishing that was used in various seminar presentations. Petitioners did not maintain a separate bank account for petitioner's fishing activities in 1985 nor did they keep books and records of their receipts and disbursements. Since 1987, petitioners have maintained a separate bank account and a complete set of books for the fishing activities. Petitioner used business cards in connection with his fishing equipment sales in 1987 and later years. During the years he was sponsored by Lunar Lures, the sponsor provided business cards with petitioner's name as well as the sponsor's name for petitioner's use in promoting Lunar Lure products. In 1985, petitioner purchased a boat, a trailer, and other equipment for his fishing activities costing $ 18,846. Petitioners claimed an investment tax credit of $ *627 1,846 with respect to the boat and related equipment on their 1985 tax return. Respondent disallowed the investment credit on the basis that the items purchased were not equipment used in a trade or business, and, therefore, such items were not eligible for the credit. Petitioner began experimenting with developing and manufacturing his own line of fishing lures in 1984. After an unproductive attempt in 1984 and 1985 to create and market a type of lure described as a "hidden" or "top-water" lure, petitioner invented a soft plastic lure called the "Devil's Claw worm" in 1987. Beginning in 1987, petitioner manufactured the Devil's Claw worm lures himself, initially by a hand-poured molding technique, and later using an injection molding machine. Subsequently , petitioner arranged for Sabine Manufacturing Company in Many, Louisiana, to manufacture the Devil's Claw worm lures by the injection molding process using petitioner's mold. Petitioner ceased making the lure himself because he discovered that the item could be produced by Sabine Manufacturing for less cost than he was able to do on his own. Petitioner filed for a trade name registration with the State of New Mexico for *628 the name "Devil's Claw" but did not seek a patent for the lure because of the cost involved and his understanding that other manufacturers would be able to sell similar products without violating the patent by making only minor changes in the design. By mid-1990, the Devil's Claw worm lure was being marketed by petitioner on a wholesale basis throughout the United States and in Canada and Japan. Sales to Japan are arranged through an export agent, JEF International, Incorporated, a company based in Mesa, Arizona, owned by Jennifer Fedrick. At trial, Ms. Fedrick testified that she placed her first order for Devil's Claw worm lures with petitioner in July 1990, and that the lure had sold well in the Japanese market since that time. Petitioner testified that he expected to make a profit from his fishing activity in 1991, based on projections from sales of the Devil's Claw worm lure and expenses for the first 4 months of the year. In addition to contracting with JEF International, Inc., for sales to Japan, petitioner promoted sales of the Devil's Claw worm lure through advertisements in 2 trade magazines: Fishing Tackle Retailer and Fishing Tackle Trade News. The latter publication *629 also printed an article on the Devil's Claw worm lure as a notable new product. During the years at issue and later years, petitioner combined the income and expenses from tournament fishing and sales of fishing equipment, including the Devil's Claw worm lure, on one Schedule C attached to petitioners' joint tax returns. Petitioners reported no income or expenses from fishing activities in 1980 but reported the following amounts of income, expenses, and net losses for subsequent years, including the 2 years at issue: Year
Gross Income
Deductions
Net Profit (or loss)
1981
$     98.65
$  4,240.99
$  (4,142,34)
1982
$    284.00
$  5,309.79
$  (5,025.79)
1983
$  1,796.00
$  9,600.00
$  (7,804.00)
1984
$  2,657.00
$  7,486.00
$  (4,829.00)
1985
$  3,010.00
$ 10,832.00
$  (7,822.00)
1986
-0-   -0-   -0- [2] 1987
$  7,073.00
$  9,540.00
$  (2,467.00)
1988
$  2,734.00
$ 17,758.18
$ (15,024.18)
1989
$  2,536.00
$ 12,808.54
$ (10,272.54)
1990
$ 11,014.00
$ 15,470.01
$  (4,456.01)
*630 Respondent determined that petitioner's bass fishing activity was not engaged in for profit within the meaning of section 183. In support of this position, respondent points out that petitioner never reported a profit in any year from its inception in 1980 through 1990, and further argues that petitioner did not conduct the bass fishing activity in a businesslike manner. Section 38 allows an investment tax credit against tax liability for property used in a trade or business with a useful life of 3 or more years upon which depreciation is allowable. Sections 38 and 48(a)(1). The parties agree that the property at issue was purchased by petitioners in 1985 for use in the fishing activity at issue. Respondent determined that petitioners are not entitled to the investment tax credit with respect to such property because the property was not used in a trade or business. Accordingly, decision of this issue turns on whether the fishing activity in question was an activity not engaged in for profit under section 183. In connection with this question, respondent disallowed the $ 7,822 and $ 2,647 losses reported by petitioners on Schedule C of their 1985 and 1987 returns. Section *631 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. Section 183(b)(1), however, provides that deductions which are allowable without regard to whether the activity is engaged in for profit shall be allowed, and section 183(b)(2) provides that deductions which would be allowable only if the activity were engaged in for profit shall be allowed, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The standard for determining whether the expenses of an activity are deductible under either section 162 or section 212(1) or (2) is whether the taxpayer engaged in the activity with the "actual and honest objective of making a profit." Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. *632 without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). The burden of proving such objective is on petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). In resolving this factual question, greater weight is given to the objective facts than to the taxpayer's after-the-fact statement of intent. Section 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Siegel v. Commissioner, 78 T.C. 659, 699 (1982). Section 1.183-2(b), Income Tax *633 Regs., sets forth a nonexclusive list of 9 objective factors relevant to the determination of whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. These factors are not merely a counting device where the number of factors for or against petitioner is determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Not all factors are applicable in every case, and no *634 one factor is controlling. Section 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, supra at 34. Petitioner appears to have been motivated, at least in part, to pursue competitive bass fishing because of his love of the sport. During the years in question, petitioners were employed full time as schoolteachers, and the business activity in question was pursued during the summer recesses, in the evenings, on weekends, and on personal leave time from their teaching duties during the school years. Prior to deciding to engage in fishing professionally, petitioner's only business experience consisted of operating an archery supply store with a partner for 2 years in 1965 and 1966. Prior to 1987, petitioners did not maintain a separate checking account or books and records for the fishing activity. Petitioner sought no professional assistance in analyzing his prospects for making a profit with his fishing activity and planning for growth of the business until 1990 or 1991. Although petitioner participated in prestigious national bass fishing tournaments and won prizes valued in excess *635 of his tournament entry fees in each year since 1980, his total expenses each year attributable to the activity, including travel costs and depreciation of equipment, exceeded his income from the activity. Given the costs of travel to tournaments and the necessity of using depreciating equipment in pursuing the activity, petitioner offered no basis for concluding that he would ever show a profit from tournament fishing. It appears to the Court that petitioner began selling fishing equipment as a means of subsidizing his participation in fishing tournaments in 1984. Even so, the addition of equipment sales to petitioner's fishing activity has not resulted in a profit in any of the years in which petitioner has engaged in both tournament fishing and sales of equipment. Since his invention of the Devil's Claw worm lure sometime in 1987, petitioner testified that he might be able to realize a profit beginning in 1991 from his activity. However, the prospects of any such success were not foreseeable in either of the years at issue, and no profit had been realized from this aspect of the activity by the close of petitioners' 1990 tax year. Considering all the circumstances, the Court *636 concludes that petitioner's fishing activity was not engaged in for profit under section 183 for the years in question. Respondent's determination is sustained. Accordingly, the boat and equipment purchased by petitioners in 1985 do not constitute property used in a trade or business, and respondent's determination that petitioners are not entitled to an investment credit with respect to such equipment is also sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners reported no income or expenses of the fishing activity on their 1986 return, explaining that, on the advice of their accountant, they elected to forego claiming a loss from the activity that year because of an audit of their 1983 and 1984 returns wherein respondent disallowed their fishing activity deductions. A settlement decision was entered in a case in this Court involving petitioners' tax liability for 1983 and 1984 on January 15, 1987.↩